1

McNAMARA GOLDSMITH
A Professional Corporation
1670 E. River Road, Suite 200
Tucson, Arizona 85718
(520) 624-0126
(520) 624-9238 - FAX

2

3

4

5

Michael F. McNamara, SBN 011277
E-mail:  mfm@mgm-legal.com
María del Pilar Mendoza, SBN 024740
E-mail: pm@mgm-legal.com
Attorneys for Plaintiff

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**IN AND FOR THE DISTRICT OF ARIZONA**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| KERRI L. DEMARS, a married woman, individually, and as Personal Representative of the Estate of Rosanne Elizabeth Kreklow, Deceased; and KEVIN KREKLOW, a married man, individually. <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY, a foreign  Life and Disability Insurer; ~~McKESSON SPECIALTY HEALTH PHARMACEUTICAL  BIOTECH & SOLUTIONS, L.P., a foreign limited partnership; McKESSON SPECIALTY HEALTH TECHNOLOGY PRODUCTS, L.L.C., a foreign limited liability company~~; US  ONCOLOGY, INC., a Delaware corporation; ARIZONA ONCOLOGY ASSOCIATES, P.C., an Arizona professional corporation; US ONCOLOGY NETWORK PLAN;  XYZ CORPORATIONS I-III; ABC PARTNERSHIPS I-III; JOHN and JANE DOES I-III, <br><br> Defendants. | NO. **4:15-cv-00125-TUC-DCB** <br><br> **PLAINTIFFS' AMENDED** COMPLAINT FOR ERISA VIOLATIONS; ERISA BENEFITS DENIED; BREACH OF FIIDUCIARY DUTY, BREACH OF A.R.S. § 20-1269 <br><br> **(Tort-Non-Motor-Vehicle)** <br><br> ~~Assigned to:~~ |

26

27

28

Plaintiffs, Kerri L. Demars, individually, and as Personal Representative of the Estate of

Rosanne Elizabeth Kreklow, Deceased, and Kevin Kreklow, individually (collectively "Plaintiffs") as

and for their Complaint against Metropolitan Life Insurance Company ("MetLife"), ~~McKesson Specialty~~

~~Health Pharmaceutical Biotech & Solutions, L.P, McKesson Specialty Health Technology Products~~

~~L.L.C.~~, US Oncology, Inc. ("US Oncology, Inc."), Arizona Oncology Associates P.C. ("Arizona

Oncology")~~,~~ US Oncology Network Plan ("the Plan"), XYZ Corporations I-III; ABC Partnerships I-III;

and John and Jane Does I-III collectively ("Defendants"), and allege as follows:

　　　　1.   The United States District Court has jurisdiction over this action pursuant to ERISA §

502 (e)(1), 29 U.S.C. § 1132(e)(1); and 28 U.S.C. § 1331.

　　　　2.   Venue is proper as the Plan was administered in this District, the breach took place in

this District, the Plaintiffs are Arizona residents, and Arizona Oncology is an Arizona Corporation.

　　　　3.   With regard to the Plaintiffs' state law claims pursuant to A.R.S. § 20-1251 *et seq*., the

Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

　　　　4.   Arizona Oncology is an Arizona professional corporation.  Arizona Oncology was

Rosanne Kreklow's employer.

　　　　5.   MetLife is a foreign Life and Disability Insurer.  MetLife was the insurance company

that provided the Group Life Insurance Plan to Arizona Oncology of which Rosanne Kreklow

("Rosanne") was a beneficiary.

　　　　6.   Kerri DeMars ("Kerri") is Rosanne's adult daughter and an Arizona resident.  Kerri is

also the Personal Representative of her mother's Estate.

　　　　7.   Kevin Kreklow ("Kevin") is Rosanne's adult son and an Arizona resident.

　　　　8.   MetLife identified the plan administrator in correspondence as "McKesson Specialty

Health" with a business address of 10101 Woodloch Forest, The Woodlands, Texas, without a phone

number for the plan.  Plaintiffs sent a request for a copy of the plan to this plan administrator, but it was

not answered.

9. Plaintiffs did not identify an entity by the name of "McKesson Specialty Health" with a business address of 10101 Woodloch Forest, The Woodlands, Texas.

9. Upon information and belief, McKesson Specialty Health Pharmaceutical Biotech & Solutions, L.P., and/or McKesson Specialty Health Technology Products L.L.C. are the entities charged with the administration of Arizona Oncology's insurance plan.

10. McKesson Specialty Health Pharmaceutical Biotech & Solutions, L.P., is a foreign limited partnership. McKesson Specialty Health Pharmaceutical Biotech & Solutions, L.P., has a business address of 10101 Woodloch Forest, The Woodlands, Texas.

10. US Oncology, Corporate Inc., is the General Partner of McKesson Specialty Health Pharmaceutical Biotech& Solutions, L.P.

11. Upon information and belief, US Oncology, Inc., is The Plan administrator of Arizona Oncology's insurance plan.

11.12. US Oncology, Inc., is a Delaware cCorporation.

12. McKesson Specialty Health Technology Products L.L.C., is a foreign limited liability company.

13. Physician Reliance Network L.L.C., is a member of Mckesson Specialty Health Technology Products L.L.C., with a corporate address of address of 10101 Woodloch Forest, The Woodlands, Texas.

14. Upon information and belief, at all times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Rosanne's employer, Arizona Oncology, administered and funded, in part or in whole, by MetLife, McKesson Specialty Health Pharmaceutical Biotech & Solutions, L.P., and McKesson Specialty Health Technology Products L.L.C.US Oncology Inc.

**Formatted:** Highlight

3

15. Defendants, and each of them, caused events to occur in Pima County, Arizona, out of which this Complaint arises.

16. Upon information and belief, Defendants ABC Partnerships I-III,  are Arizona or foreign general or limited partnerships whose identities are presently unknown to Plaintiffs, and who committed some or all of the acts complained of herein.

17. Upon information and belief, Defendants John Does III-VI and Jane Does I-III, are individuals or married couples whose identities are presently unknown and not reasonably ascertainable to Plaintiffs, and who committed some or all of the acts complained of herein.

18. All acts complained of herein were done by Defendants or by their authorized agents in the course and scope of their employment or agency, and as to married individuals, were done in furtherance of their respective marital communities.

**General Allegations**

19. Rosanne participated in Arizona Oncology's life employee benefits plans, including the life insurance plan insured by Metropolitan Life Insurance; i.e., Group Contract Number 139108.

20. Upon information and belief, the Plan Administrator is ~~McKesson Specialty Health~~ US Oncology Inc. located at 10101 Woodloch Forest Drive, The Woodlands, Texas 77380.

~~21.  Upon information and belief, Defendants McKesson Specialty Health Pharmaceutical Biotech & Solutions, L.P., and McKesson Specialty Health Technology Products L.L.C., are the entities under which the Plan Administrator administered the Plan in Arizona.~~

~~22.~~21.   Plaintiffs, Kerri and Kevin, are the beneficiaries of Rosanne's life insurance policy.

~~23.~~22.   Rosanne was an oncology nurse and worked at Arizona Oncology for approximately 11 years.

4

24.23.   On August 20, 2012, Rosanne had debilitating knee pain and went to the emergency room.

25.24.   Rosanne's pain resulted from a tumor in her knee.  She was diagnosed with Stage IV Cancer.  At the time of diagnosis, the cancer had spread over her body, including her lungs and bones.

26.25.   The tumor broke Rosanne's tibia, and soon after her cancer diagnosis, she underwent surgery to fix her fracture.

27.26.   Rosanne sought cancer treatment at Arizona Oncology, the practice where she worked as an oncology nurse.

28.27.   Rosanne was terminally ill, and her doctors informed her that she would be able to live for three to four months if she did not get treatment, and for a year and a half if she underwent cancer treatment.

29.28.   In 2012, and while employed by Arizona Oncology, Rosanne began cancer treatment at Arizona Oncology.

30.29.   Kerri, Kevin, Amee Kreklow (Rosanne's daughter in-law) and Paul DeMars (Rosanne's son-in-law) cared for Rosanne and took her to all doctors' appointments and cancer treatments.

31.30.   Rosanne's visits to Arizona Oncology after her cancer diagnosis were to undergo cancer treatment or to see her cancer physician.

32.31.   Rosanne never had an appointment with Arizona Oncology human resources to discuss her benefits outside of her scheduled visits to see her cancer physician or to undergo radiation or chemotherapy.

33.32.   Immediately after her cancer diagnosis, Rosanne applied for leave under the Family Medical Leave Act ("FMLA").

34.33.   Rosanne applied and paid all premiums to continue her Short Term and Long Term Disability Coverage.

35.34.   Kerri and Kevin cared for their mother, at her mother's home, and attended to all her financial and medical affairs during her mother's terminal illness.

36.35.   Rosanne began hospice care at home in September 2013, and died on December 1, 2013.

37.36.   On January 2, 2014, Met Life Insurance Company sent correspondence to Kevin and Kerri informing them they were the beneficiaries of their mother's life insurance with Arizona Oncology and enclosing forms to make an insurance claim.

38.37.   Kevin and Kerri presented a claim for life insurance benefits to the Plan and Metlife in a timely manner.

39.38.   On February 5, 2014, MetLife denied Kevin's and Kerri's life insurance claim.

40.39.   In their February 5, 2014 correspondence, MetLife stated that Rosanne's employment with Arizona Oncology ended on May 1, 2013, and that premium payments had stopped.

41.40.   On March 4, 2014, Kerri appealed MetLife's decision.  Kerri stated her mother did not know she no longer had life insurance and that she had made payments to continue both her long term disability and her health care insurance.

42.41.   On April 9, 2014, MetLife sent correspondence to Kerri with their final decision regarding their review of their denial of life insurance policy to Kerri and Kevin.

43.42.   In their April 9, 2014 correspondence, MetLife stated Rosanne ended her employment with MetLife in March, 2013.  MetLife further stated that this was confirmed with the employer who had mailed correspondence to Rosanne on March 29, 2013.

44.43.   After Rosanne's death, MetLife produced a copy of the March 29, 2013 letter from US Oncology to Rosanne.  This letter stated that Rosanne would need to continue with co-pays for her health insurance under COBRA and her disability insurance.

45.44.   The March 29, 2013 correspondence did not provide Rosanne with information regarding continuing her life insurance policy.

46.45.   In both the February 5, 2014 and the April 9, 2014 correspondence to Kerri, MetLife admitted that Rosanne had an option to convert her employer sponsored policy into an individual Life Insurance Policy.

47.46.   Upon information and belief, the provision of the plan that provides for Rosanne's option to convert provides:

**When you will have the Option to Convert**
You will have the option to convert when:
A.  Your Life Insurance ends because:
   • You cease to be in an eligible class;
   • Your employment ends;

**Application Period**
If you opt to convert Your Life Insurance for any of the reasons stated above, we must receive a completed conversion application from You within 31 days after the date Your life Insurance ends or is reduced.

48.47.   MetLife and/or the Plan were required to provide Rosanne with an adequate notice of her right to exercise her option to convert.

49.48.   Arizona Oncology was required to provide Roseanne with notice regarding her right to exercise her option to convert her life insurance policy.

50.49.   Rosanne never received notice of her right to exercise her option to convert.

7

51.50.   MetLife and the Plan failed to provide Rosanne with a conversion notice. At no time did either Rosanne or Kerri receive any conversion notification from MetLife.  Presently, the Plan and MetLife have produced an unsigned, unformatted, and unverified form document dated May 13, 2013, containing a conversion letter test.  This form document is not attributable to any person at MetLife, and is from an unnamed "MetLife Transition Solutions." Because of the absence of such documentation of notice, no reasonable person could have found precisely what, if any, writing concerning her conversion rights were provided or available.

52.51.   Given that Rosanne was terminally ill with weeks to live and that she had elected to continue with her long term disability and her health insurance benefits, a reasonable person in her position, would have elected to also convert her Group Life Insurance policy to an individual policy had she been given proper and required notice of her right to do so, or provided with a form to ensure the same.

53.52.   The Defendants are precluded from denying benefits to Plaintiffs, because the conversion period  and/or the termination of benefits that allegedly occurred on May 1, 2013, was stayed and/or equitable tolled given Rosanne's conditions as a terminally ill cancer patient. Between May 1, 2013, and December 1, 2013, Rosanne was terminally ill and suffering from cancer as well as its treatments.  It is alleged, upon information and belief, that the Plan continues coverage during such terms of terminal disability.  The Plan's conversion period of termination date is stayed and/or equitably tolled as a matter of law in cases where a terminally ill patient, who may be in a state of incapacitation, is unable to elect continued Life Insurance Coverage. The option of continuing coverage on any of these bases, or any other, was never extended to the Plaintiffs by Defendants.

8

54.53.   Plaintiffs have requested a complete copy of the Plan from both MetLife and the Plan Administrator.  At the time of this filing, more than 30 days have passed since this request and the Plaintiffs have not received a copy of the Plan.

**COUNT I**

**[FOR ERISA BENEFITS]**

55.54.   Plaintiffs reallege each and every allegation previously stated as though fully set forth herein.

56.55.   ERISA 502 § (a)(1)(b), 29 U.S.C. 1132 (a)(1)(B) permits a plan participant or beneficiary to bring a civil action to recover benefits due under the terms of the plan, to enforce rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of the plan.

57.56.   Plaintiffs are entitled to death benefits arising from Rosanne's life insurance policy.

58.57.   At all relevant times, Plaintiffs have been entitled to Life Insurance Benefits.  By denying the Plaintiffs' benefits under the Plan, and by related acts and omissions, Defendants MetLife and the Plan have violated and continue to violate the terms of the Plan and the Plaintiffs' rights thereunder.

**COUNT II.**

**[BREACH OF FIDUCIARY DUTY AND REQUEST FOR EQUITABLE RELIEF UNDER ERISA § 502(a)(3)]**

59.58.   Plaintiffs reallege each and every allegation previously stated as though fully set forth herein.

60.59.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action to enjoin any act or practice which violates any provision of ERISA Title I or the terms of

the plan, or to obtain any other appropriate equitable relief to redress such violations or to enforce any provisions of the title or the terms of the plan.

61.60.   ERISA §  404(a)(1)(D), 29 U.S.C. § 1104 (a)(1)(D), requires that a fiduciary of an employee benefit plan administer the plan in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

62.61.   ERISA § 3 (21)(A), 29 U.S.C.  § 1002 (21)(A), provides that a person is a fiduciary with respect to a plan to the extent:

     a.  He exercises any discretionary authority or discretionary control respecting management of such plan or exercise any authority or control respecting management or disposition of its assets;

     b.  He renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or

     c.  He has any discretionary authority or discretionary responsibility in the administration of such plan.

63.62.   At all relevant times herein, the Defendants served as the Plan's fiduciaries.

64.63.   On or about March 29, 2013, Defendants knew or should have known of Rosanne's terminal condition.

65.64.   On or about March 29, 2013, Defendants should have but failed to take certain practical, common sense and prudent actions to inform and notify Rosanne who was diagnosed as terminally ill, and/or her adult children Kerri and Kevin, who provided care for her mother and handled her financial affairs, about Rosanne's life insurance benefits.

66.65.   Defendants breached their fiduciary duties to Plaintiffs and they were harmed thereby.

## COUNT III.

### [CLAIMS OF INTEREST, FINES and ATTORNEY'S FEES PURSUANT TO §§ 1132(a)(3), 1132(4), 1132(g)(1)]

67.66.   Plaintiffs reallege each and every allegation previously stated as though fully set forth herein.

68.67.   Defendants are responsible to pay Plaintiffs interest from Rosanne's date of death or December 1, 2013, pursuant to 29 U.S.C. § 1132(a)(3).

69.68.   29 U.S.C. § 1024(b) requires that the Plan Administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description. The Plan and the Plan Administrator, after written request, failed to provide the Plaintiffs with a copy of the Plan.   Pursuant to 29 U.S.C. § 1132(c), the Plan Administrator and Defendants owe Plaintiffs a daily civil monetary penalty.

70.69.   Defendants are responsible to provide Plaintiffs their reasonable attorney fees/costs of litigation pursuant to 29 U.S.C. § 1132(g)(1).

## COUNT IV.

### [CLAIM OF LACK OF CONVERSION NOTICE PURSUANT TO A.R.S. § 20-1269]

71.70.   Plaintiffs reallege each and every allegation previously stated as though fully set forth herein.

72.71.   Arizona Oncology's Plan under which Rosanne was insured is a plan regulated by A.R.S. §  20-1251 *et. seq*.

73.72.   Rosanne had a right to convert her Group Life Insurance Policy into an individual Life Insurance Policy pursuant to the terms of the Plan and A.R.S. § 20-1266.

74.73.   Rosanne had a right to written notice from Defendants regarding her right to convert her Group Life Insurance Policy into an individual Life Insurance Policy pursuant to the terms of the Plan and A.R.S. § 20-1269.

75.74.   Defendants did not provide Rosanne with written notice of her right to convert her Group Life Insurance Policy, and she was damaged thereby.

## COUNT V.

### [PLAINTIFFS' REASONABLE EXPECTATIONS]

76.75.   Plaintiffs reallege each and every allegation previously stated as though fully set forth herein.

77.76.   Rosanne knew she was terminally ill and continued all her disability and health insurance benefits after her diagnoses.

78.77.   Rosanne knew she was terminally ill and made all preparations for this event, she knew she had life insurance with her employer, and had a reasonable expectation that her children would receive this benefit.

79.78.   Defendants breached their duty to Rosanne by failing to provide her with adequate notice of her need to convert her life insurance to continue coverage.   Rosanne had a reasonable expectation that her life insurance benefit would continue given the fact that she never received notice that she needed to convert this insurance to continue coverage.

80.79.   Defendants' breach harmed Plaintiffs.

**WHEREFORE**, Plaintiffs are entitled to judgment in their favor and against the Defendants, and each of them, for the following relief:

1.      Declare that the Defendants violated the terms of the Plan by denying the Plaintiffs' claims for Life Insurance Benefits;

2.  Declare that the Defendants violated Arizona law when they failed to provide notice of conversion to Rosanne;

3.  Order Arizona Oncology to pay compensatory damages to Plaintiffs;

4.  Order MetLife and the Plan to pay the Plaintiffs' Life Insurance Benefits pursuant to the terms of the Plan;

5.  Order the Defendants to pay interest on Plaintiffs' past benefits due from the date of death to the date of judgment herein;

6.  Order the Defendants to pay fines for their failure to produce the Plan pursuant to 29 U.S.C. § 1132(c);

7.  Award Plaintiffs reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and

8.  For other and further relief as the Court determines to be appropriate under the circumstances.

DATED this 8th day of July , 2015.

Formatted: Superscript

McNAMARA GOLDSMITH, P.C.


By: /s/ Michael F. McNamara_____
    Michael F. McNamara
    Maria del Pilar Mendoza
    Attorneys for Plaintiffs

The foregoing document electronically
filed with the U.S. District Court, District
of Arizona, this 30th day of March, 2015.

13